# IN THE CHANCERY COURT FOR MONROE COUNTY, TENNESSEE

| | |
|---|---|
| STATE OF TENNESSEE on relation of<br>JASON E. MUMPOWER, Comptroller,<br>for its own use and benefit and for the use<br>and benefit of the CITY OF SWEETWATER,<br>TENNESSEE, a Tennessee municipal<br>corporation, and MONROE COUNTY,<br>TENNESSEE, one of the political subdivisions<br>of the State of Tennessee,<br><br>Plaintiffs,<br><br>VS.<br><br>SAKURA PRESERVATION TRUST,<br>Dr. S. L. Freed, as Trustee, a Land Trust,<br>1000 Hwy 180, Hiawassee, GA 30546-5408;<br><br>ENOTA, INC., a Georgia non-profit<br>corporation, 1000 Hwy 180,<br>Hiawassee, GA 30546-5408;<br><br>ENOTA INSTITUTE, INC., a Georgia<br>non-profit corporation, 1000 Hwy 180,<br>Hiawassee, GA 30546-5408;<br><br>SUSAN L. FREED, in her individual capacity,<br>1000 Hwy 180, Hiawassee, GA 30546-5408;<br><br>AND<br><br>JONATHAN SKRMETTI, ATTORNEY GENERAL<br>of the State of Tennessee,<br>Financial and Regulatory Section,<br>Public Interest Division,<br>P.O. Box 20207,<br>Nashville, TN 37202,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 21,994

FILED

AUG 05 2024

TIME 11:15

TERESA A. CHOATE
CLERK & MASTER MONROE CTY.

FILED

AUG 0 5 2024

TIME __11:15__

TERESA A. CHOATE
CLERK & MASTER MONROE CTY.

## COMPLAINT

Comes now the Plaintiff, City of Sweetwater, Tennessee (the "City"), through John W. Cleveland, Sr., its delinquent tax attorney chosen by the Recorder of the City of Sweetwater, Tennessee, with the approval of the Mayor of said City; and the Plaintiff, Monroe County, Tennessee, (the "County") through W. Tyler Weiss, its delinquent tax attorney chosen by the County Commission with the approval of the Mayor of said County; and pursuant to the provisions of *Tenn. Code Ann.* §67-5-2401 *et seq.*, brings this action to collect delinquent taxes due the City of Sweetwater and for its cause of action would show:

*1.* SAKURA PRESERVATION TRUST, Dr. S. L. Freed, as Trustee, a Land Trust ("Sakura"), is a delinquent taxpayer, which has not paid Sweetwater *ad valorem* real property taxes for the tax years 2011 through 2023, according to information provided by the Recorder for the City of Sweetwater, Tennessee, pursuant to *Tenn. Code Ann.* §67-5-2405.

*2.* ENOTA, INC. ("Enota"), is a Georgia non-profit corporation, which can be served with process on its registered agent, Greg S. K. Ness, 4104 Columns Drive SE, Marietta, GA, 30067.

*3.* ENOTA INSTITUTE, INC., is a Georgia non-profit corporation, which can be served with process on its registered agent, Registered Agent Solutions, Inc., 900 Old Roswell Lakes Pkwy, Suite 310, Roswell, GA 30076.

*4.* SUSAN L. FREED is Trustee of Sakura, Chief Executive Officer of Enota, Inc. and Enota Institute, Inc., and former Chief Financial Officer of Enota Institute, Inc. She can be served with process at 1000 Hwy 180, Hiawassee, GA 30546-5408.

5. JONATHAN SKRMETTI is the Attorney General of the State of Tennessee ("Attorney General"). The Attorney General discharges his oversight of nonprofit corporations and charitable trusts through its Financial and Regulatory Section, Public Interest Division. The Tennessee Uniform Trust Code, *Tenn. Code Ann.* §35-15-110(b), confers the status of a qualified beneficiary upon the Attorney General, and the Attorney General is required be a party in any judicial proceeding involving a charitable trust. The Tennessee Charitable Beneficiaries Act of 1997, *Tenn. Code Ann.* §35-13-110, authorizes the Attorney General to represent the charitable beneficiaries, potential charitable beneficiaries and all citizens of the state in all legal matters pertaining to the amount, administration and disposition of a charitable gift.

6. The parcel of real estate on which said taxes have accrued and are now delinquent is identified by the Assessor of Property of Monroe County, Tennessee, as Tax Map 015, Parcel 194.01 ("TMG"), formerly Map 015, Parcels 194.00 and 194.01, and for the tax year 2011, 194.01 SI 000 and SI 002 under the name Sweet Water Sustainability Institute. By virtue of the law of the State of Tennessee, the City and the County, have good and valid first liens upon the respective parcels to secure the payment of the delinquent taxes and interest, penalties, fees and/or costs associated therewith.

7. Sakura is justly indebted to the City and the County for tax assessments for the years 2011 to present, together with all interest, penalties, fees and costs which have accrued and which shall accrue pursuant to the laws of the State of Tennessee.

8. Sakura claimed an exemption to the *ad valorem* real property taxes on the Property for the tax years 2011, 2012, 2013, 2014 and 2015. Said claims and the

appeals from their denial were ultimately dismissed in *Sweetwater Sustainability Institute, Inc., a/k/a Sakura Preservation Trust v. Tennessee State Board of Equalization, et al.*, Knox County Chancery Court, No. 195426-2. A copy of said judgment is filed as Exhibit "A" to this Complaint and is incorporated herein by reference as fully and completely as if set forth verbatim.

*9.* Sakura contested the valuation of the Property for the tax years 2012-2016. The valuation was ultimately decided in *Monroe County, Tennessee, Marsha Raper, Monroe County Assessor of Property v. Tennessee State Board of Equalization, Assessment Appeals Commission, et al.*, Knox County Chancery Court, No. 18-196604-1. A copy of said Memorandum Opinion and Final Judgment is filed as Exhibit "B" to this Complaint and is incorporated herein by reference as fully and completely as if set forth verbatim.

*10.* According to the Memorandum Opinion and Final Judgment entered in said action, the appraised value of TMG for the tax years 2012–2016 for calculation of *ad valorem* taxes was $4,500 per acre.

*11.* A certified list of the delinquent real property taxes due the City for TMG for the tax years 2011, 2012–2016 and 2017–2022 tax year, provided by the Recorder for the City of Sweetwater, Tennessee, pursuant to *Tenn. Code Ann.* §67-5-2405, which was prepared and certified in accordance with statute and is in all respects proper and complete, is filed herewith as Exhibit "C," and is incorporated herein by reference as if fully set out verbatim.

*12.* A certified list of the delinquent real property taxes the County for TMG for the tax years 2011, 2012–2016 and 2017–2022 tax year, provided by the Trustee for Monroe County, Tennessee, pursuant to *Tenn. Code Ann.* §67-5-2405, which was prepared and certified in accordance with statute and is in all respects proper and complete, is filed herewith as Exhibit "D," and is incorporated herein by reference as if fully set out verbatim.

*13.* *Tenn. Code Ann.* §67-5-1806(a) bars collection of real property taxes after the lapse of ten (10) years from April 1 of the year following the year in which such taxes become delinquent, but §1806(b) tolls the bar against collection as to taxes at issue in an administrative appeal before the state board of equalization, from the date of filing the appeal through issuance of the final assessment certificate and during the pendency of any judicial review thereof; therefore, the accumulation of ten years to bar collection of the taxes in this suit did not begin to run until October 27, 2023.

*14.* Whereas said taxes remain past due and unpaid after notice and demand has been made for each and every assessment according to statute, Plaintiff brings this suit for the purpose of establishing and/or enforcing its lien against TMG for the purpose of securing payment of the taxes, interest, penalties, fees and costs as provided by law.

*15.* Outstanding and unpaid taxes due the City against TMG for prior years pending under #18,005 (2011), #18,472 (2012), #18,906 (2013), #19,382 (2014), #19,860 (2015), #20,272 (2016), #20,712 (2017), #21,179 (2018), #21,363 (2019), and #21,551 (2020) (tax years 2013–2020 previously consolidated), and #21,750 (2021) and #21,934 (2022), will be severed and consolidated under the docket number of this delinquent tax suit upon filing a notice pursuant to *Tenn. Code Ann.* §67-5-2418.

*16.* Outstanding and unpaid taxes due the County against TMG for prior years pending under #18,004 (2011), #18,468 (2012), #18,896 (2013), #19,389 (2014), #19,864 (2015), #20,262 (2016), #20,700 (2017), #21,075(2018), #22,318 (2019), #21,550 (2020),, (tax years 2013–2020 previously consolidated under #21,550), and #21,751 (2021), #21,935 (2022), will be severed and consolidated under the docket number of this delinquent tax suit upon filing a notice pursuant to *Tenn. Code Ann.* §67-5-2418.

*17.* Three (3) or more periodic inspections of TMG over a two-month period at different times of the day reveal the following evidence of abandonment described in *Tenn. Code Ann.* §67-5-2701(a)(3):

    (i) Overgrown or dead vegetation;

    (iii) Past due utility notices, disconnected utilities, or utilities not in use;

    (iv) Accumulation of trash, refuse, or other debris;

    (v) Absence of window coverings such as curtains, blinds, or shutters;

    (vi) One (1) or more boarded, missing, or broken windows;

    (vii) The property is open to casual entry or trespass; and

    (viii) The property has a building or structure that is or appears structurally unsound or has any other condition that presents a potential hazard or danger to the safety of persons.

An affidavit attesting to said inspections by Jon Campbell, Sweetwater Codes Enforcement Officer, is filed as Exhibit "E" to this Complaint and is incorporated herein by reference as fully and completely as if set forth verbatim.

*18.* Pursuant to *Tenn. Code Ann.* §67-5-2701(a)(1)(D), the period of redemption for TMG is 30 days from the entry of the order confirming the sale.

*19.* Each of the Plaintiffs reserve the right to bid pursuant to *Tenn. Code Ann.* §67-5-2508(a)(1).

*20.* Dr. S. L. Freed, as Trustee of Sakura, caused a deed of trust to be filed in the Office of the Register of Deeds of Monroe County, Tennessee, in Trust Deed Book Y-31, Page 228, purporting to secure payment of a note for Seven Hundred Thirty Thousand Dollars ($730,000.00) to Enota Institute, Inc., for which S. L. Freed signed as its CFO. A copy of said Deed of Trust is filed as Exhibit "F" to this Complaint and is incorporated herein by reference as fully and completely as if set forth verbatim.

*21.* On information and belief, Plaintiff avers that there was no monetary consideration for said note or personal property of Enota Institute, Inc., transferred to Sakura or any Home Depot donations, as recited in said deed of trust, or if there was any money, personal property or donations, that the value of same was so small as to be meaningless.

*22.* Plaintiff avers, on information and belief, that Susan L. Freed will seek to divert excess proceeds from the tax sale of TMG from their purpose in order to receive a direct or indirect financial benefit in connection with a said disposition of assets of Sakura in violation of the laws of the State of Tennessee, including but not limited to *Tenn. Code Ann.* §48-62-103(b).

PREMISES CONSIDERED, PLAINTIFF PRAYS:

*1.* That service of process issue to be served upon Sakura Preservation Trust, Dr. S. L. Freed, as Trustee, a Land Trust; on Enota, Inc., a Georgia non-profit corporation; Enota Institute, Inc., a Georgia non-profit corporation; and on Susan L. Freed, 1000 Hwy 180, Hiawassee, GA 30546-5408; all at 1000 Hwy 180, Hiawassee, GA 30546-5408, through the Tennessee Secretary of State in accordance with *Tenn.R.Civ.P.* Rule 4.05, requiring them to answer this Complaint.

*2.* That the *in rem* jurisdiction of this Court be invoked for said parcel of real estate in addition to personal jurisdiction over Defendants and if personal jurisdiction of Defendants cannot be had by personal service of process.

*3.* That any and all pending previous delinquent tax bills in all cases where the same parcel of property is involved be consolidated into this action.

*4.* That an Order of Reference be entered in this action to ascertain the amount of delinquent taxes, interest, penalties, costs and attorney fees, *etc.*, for the year 2022 and all previous years, and that a judgment be rendered against the Defendant for the amount shown to be due from such Defendant by the report of the Clerk & Master.

Defendant for the amount shown to be due from such Defendant by the report of the Clerk & Master.

5. That a lien be decreed by the Court against the lands and properties described in this bill to secure the payment of the amount assessed against said respective items of property, and that said property be sold to satisfy said lien and judgment, said sale to be in accordance with the delinquent tax laws of the State of Tennessee.

6. That a Receiver be appointed to take charge of said property if and when the same becomes necessary for the preservation of the property and the collection of Plaintiff's claim against said parcels of land or property.

7. That the proceeds arising from any sale of property in this cause be applied and disbursed as provided by law, and that any excess proceeds be held in the registry of the Clerk and Master subject to resolution of such claims as may be filed pursuant *Tenn. Code Ann.* §§ 67-5-2702 and 48-62-102.

8. That the Plaintiff have such other, further and general relief to which it may be entitled.

THIS IS THE FIRST APPLICATION FOR APPOINTMENT OF A RECEIVER IN THIS CAUSE.

JOHN W. CLEVELAND, SR. (BPR #5829)
Sweetwater Tax Attorney
Post Office Box 267
Sweetwater, Tennessee 37874
Phone:  423/ 337-6979
 Fax:  423/ 337-9663
 email: *jcleveland@sweetwatertn.gov*

W. TYLER WEISS (BPR#28,801)
Monroe County Tax Attorney
409 N. College Street, Suite 1
Madisonville, Tennessee 37354
Phone:  423/ 442-5353
 Fax:  423/ 442-3866
 email: *tweiss@worthingtonweiss.com*

State of Tennessee )
County of Monroe )     OATH

      Jessica Morgan makes oath in due form of law that she is the Recorder for the City of Sweetwater, Tennessee, duly appointed and qualified, and that the facts stated in the foregoing Complaint are true to the best of her knowledge, information and belief.

Sworn to and subscribed to me

this _10th_ day of July, 2024.

_____
NOTARY PUBLIC
My Commission Expires _02/08/2026_

_____
JESSICA MORGAN, *City Recorder*

State of Tennessee )
County of Monroe )     OATH

      Marna Maynard Hull makes oath in due form of law that she is the Trustee for Monroe County, Tennessee, duly appointed and qualified, and that the facts stated in the foregoing Complaint are true to the best of her knowledge, information and belief.

Sworn to and subscribed to me

this _12_ day of July, 2024.

_____
NOTARY PUBLIC
My Commission Expires _8-31-26_

_Marna Maynard Hull, Trustee_
MARNA MAYNARD HULL, *Trustee*

APPROVED FOR AND ON BEHALF OF THE CITY OF SWEETWATER, MONROE COUNTY, TENNESSEE.

_____
DOYLE LOWE, *Mayor*

APPROVED FOR AND ON BEHALF OF MONROE COUNTY, TENNESSEE.

_____
MITCH INGRAM, *Mayor*



SEP 2 5 2023

J. SCOTT GRISWOLD

# *IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE*

SWEET WATER SUSTAINABILITY )
INSTITUTE, INC., *a/k/a* Sakura )
Preservation Trust, )
)
    Petitioner, )
) **No. 195426-2**
VS. )
)
TENNESSEE STATE )
BOARD OF EQUALIZATION, *et al.*, )
)
    Respondents. )

## *ORDER OF DISMISSAL*

This cause came to be heard on September 25, 2023, before the Honorable Richard B. Armstrong, Jr., Chancellor of the Chancery Court for Knox County, Tennessee, Part II, upon the Motion to Dismiss for Failure to Prosecute, filed by the the Respondents, Monroe County, Tennessee, and Monroe County Assessor of Property ("Monroe County"), against the Petitioner, Sweet Water Sustainability Institute, Inc. *a/k/a* Sakura Preservation Trust ("SWSI"), SWSI's failure to respond or appear, the statements of counsel, and the record as a whole, from all of which the Court finds as follows:

*1.* On March 6, 2018, SWSI filed its Petition for review in this action.

*2.* On May 26, 2021, Chancellor Pridemore entered an Agreed Order Continuing the Trial and Granting Joint Motion for Stay Pending Settlement Negotiations. Said Order required SWSI's counsel to submit a written report apprising the Court of the status of their settlement discussions every sixty (60) days.



**Exhibit "A"**

3. SWSI's counsel submitted six (6) status reports, none of which reported any meaningful progress in negotiating a settlement, discovery or other preparation for trial.

4. On May 17, 2022, SWSI's own counsel filed its Final Status Report that settlement of this case was unlikely, SWSI's counsel was withdrawing from this case and all related actions, and requesting that SWSI have sixty (60) days to retain new counsel.

5. On July 14, 2022, an Order was entered allowing SWSI's counsel to withdraw and allowing SWSI sixty (60) days to retain new counsel.

6. In over five and half (5½) years since SWSI filed its petition and over four hundred thirty-eight (438) days since entry of the order allowing SWSI's former counsel to withdraw, SWSI has failed to prosecute its Petition for Review.

7. These matters concern one or more of the tax years 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019 and 2020. No county or city real property taxes have been paid since 2010.

8. Monroe County and the City of Sweetwater have not only been subject to a continuing threat of eventual judgment, they have been denied the benefit of a judgment and ten (10) years of taxes by SWSI's failure to prosecute.

9. Involuntary dismissal of this appeal for failure of the SWSI to prosecute is necessary to enable this Court to manage its docket and to protect Monroe County defendants against plaintiffs who are unwilling to put their claims to the test. *See*, *Tenn. R. Civ. P.* Rule 41.02; and *Osagie v. Peakload Temp. Serv.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002).

*IT IS THEREFORE ORDERED* that this appeal be, and the same is hereby, **DISMISSED WITH PREJUDICE**.

The costs of this cause are taxed against Sweet Water Sustainability Institute,

for which execution may issue, if necessary

*ENTER* this 25th day of *SEPT*, 2023.

RICHARD B. ARMSTRONG, JR.

Chancellor

APPROVED FOR ENTRY:

ATTEST

Certified a True Copy

Clerk and Master Chancery Court

By

Deputy Clerk

JOHN W. CLEVELAND, SR. (BPR #5829)
ROBERT T. LEE (BPR #14,130)
J. REED DIXON (BPR #1442)
Attorney for Respondents
P. O. Box 267
Sweetwater, Tennessee 37874
Phone: 423/ 807-0761
email: *johnwcleveland@gmail.com*

## CLERK & MASTER'S CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Order, marked on its face as filed for entry, was served by email to jessica.simon@ag.tn.gov and by placing a true copy of same in the United States Mail, with sufficient postage thereon to carry the same to its destination, addressed to Jessica C. Simon, Assistant Attorney General, Office of the Attorney General, Tax Division, P. O. Box 20207, Nashville, Tennessee 37202, and Sweetwater Sustainability Institute, Inc., 1000 GA-180, Hiawassee, GA 30546 on _____ ____, 2023.

J. SCOTT GRISWOLD,
*Clerk and Master*

BY:_____
Clerk & Master / Deputy Clerk

ENTERED

SEP 27 2023

J. SCOTT GRISWOLD

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

MONROE COUNTY, TENNESSEE,                    }
MARSHA RAPER, MONROE COUNTY                  }
ASSESSOR OF PROPERTY,                        }
                                             }
    Petitioners,         }
                                             }
vs.                                          } No. 18-196604-1
                                             } NOTICE OF ENTRY
TENNESSEE STATE BOARD OF                     } REQUIRED
EQUALIZATION, ASSESSMENT APPEALS             }
COMMISSION, and SWEETWATER                   }
SUSTAINABILITY INSTITUTE, INC.               }
a/k/a SAKURA PRESEVATION TRUST,              }
                                             }
    Respondents.          }

## FINAL JUDGMENT

This cause came on to be heard on September 25, 2023, upon the Motion for Entry of

Judgment filed by the Petitioners, Monroe County, Tennessee, and the Monroe County

Assessor of Property. The petitioners appeared through their counsel. The respondents did not

appear.

The Court initially took the issue of whether the relief requested by the petitioners on

the administrative appeal could be joined with matters in the nature of an original action, such

as matters in a delinquent tax suit under advisement. However, after a brief adjournment, the

Court was able to recall the petitioners' counsel back into the courtroom and call their attention

to *Groves v. Tennessee Department of Safety and Homeland Security, 2018 WL 6288170, \*5*

*(Tenn. Ct App. November 30,2018).* At the resumed hearing, the petitioners orally

discontinued, without prejudice, their request for relief beyond that set forth in their petition for

review on the matter of valuation.

FILED

Exhibit "B"

AUG 0 5 2024

TIME $EX.B$  $11:15$

It is, therefore, **ORDERED, ADJUDGED AND DECREED** as follows:

1. That the stay imposed by the Agreed Order entered June 15, 2021, is lifted;

2. That the Court's Memorandum Opinion filed June 26, 2020, is adopted and incorporated herein by reference;

3. That the prayer of the petitioners, Monroe County and its Property Assessor, for reversal of the decision of the Assessment and Appeals Commission is denied;

4. That the decision of the Assessment and Appeals Commission that the value of the property is $4,500.00 per acre is affirmed;

5. That any and all other relief requested by the petitioners is deemed and taken as having been voluntarily discontinued without prejudice;

6. That the Clerk and Master is directed to enter this judgment as a final judgment, there being no just reason for delay; and

7. That the court costs are taxed to the Petitioners.

ENTER this __27th__ day of __September__, 2023.

CHANCELLOR JOHN F. WEAVER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing document has been served upon all counsel or parties as listed below at interest in this cause by, hand delivery or by placing the same in the United States mail, postage prepaid, addressed to said counsel or parties at his/her office:

John W. Cleveland, Sr., Esq.
Attorney for Petitioners
P.O. Box 267
Sweetwater, TN 37874

Robert T. Lee, Esq.
Attorney for Petitioners
P.O. Box 267
Sweetwater, TN 37874

J. Reed Dixon, Esquire
Attorney for Petitioners
P.O. Box 267
Sweetwater, TN 37874

Jessica C. Simon, Esq.
Assistant Attorney General
Office of the Attorney General
Tax Division
P.O. Box 20207
Nashville, TN 37202

Sweetwater Sustainability Institute, Inc.
1000 GA-180
Hiawassee, GA 30546

Sweetwater Sustainability Institute, Inc.
c/o Greg S. K. Ness
1519 King Street
Charleston, SC 29405

This the 27th day of September 2023.

_J. Scott Griswold_

Knox County Clerk & Master, J. Scott Griswold
Deputy Clerk

FILED

2020 JUN 26  PM 12: 11

**IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE**

HOWARD G. HOGAN

## PART I

1496-647

MONROE COUNTY, TENNESSEE;
MARSHA RAPER, MONRO COUNTY
ASSESSOR OF PROPERTY,

     Petitioners,

v.

No. 196604-1 ✓

TENNESSEE STATE BOARD OF
EQUALIZATION, ASSESSMENT
APPEALS COMMISSION and
SWEETWATER SUSTAINABILITY
INSTITUTE, INC., a/k/a/
SAKURA PRESERVATION TRUST,

    Respondents.

## MEMORANDUM OPINION

This is on the petition of Monroe County, Tennessee and its assessor of property

for judicial review of the decision and order of the Assessment and Appeals Commission

dated June 6, 2018. The decision and order became the final action of the State Board of

Equalization per its email dated July 23, 2018. The Assessment and Appeals Commission

rendered its decision and order upon the appeal of the taxpayer from the decision and

order of the administrative law judge.

The standard of review in this court is *de novo* based upon the administrative

record and any additional or supplemental evidence which either party wishes to adduce

relevant to any issue. Tenn. Code Ann. §67-5-1511. The petitioners, Monroe County and

its property assessor, concede that they have the burden of proof on their petition. *See Big Fork Min. Co. v. Tennessee Water, Etc.*, 620 S.W. 2d 515, 52 (Tenn. Ct. App. 1981) (burden of proof is on party seeking affirmative relief).

This case involves the property formerly known as the Tennessee Military Institute located in the City of Sweetwater within the County of Monroe. The property changed hands from the Tennessee Military Institute many years ago and with the buildings on the property being vacant since 2007.

The assessor of property has divided the property into two tracts for purposes of taxation, with one tract consisting of 96.5 acres of raw land and the other tract consisting of 45.08 acres with the buildings. The Assessment and Appeals Commission set the land value of both tracts at $4,500.00 per acre or $434,250.00 for the tract of 96.5 acres and $202,860.00 for the tract of 45. 08 acres. The Assessment and Appeals Commission found the improvements to have a value of zero.

The tax assessments for the years 2012-2016 are the assessments in issue. The property assessor's valuations of the two tracts, as originally rendered, appear to have been completely abandoned by the assessor and replaced with the valuation of her expert witness appraiser for this litigation. The petitioners, Monroe County and its assessor, argue that the property has a value of $17,500.00 per acre. However, the property assessor has never assessed the property with that value. On the other hand, the taxpayer argues that the property has a value of $3,500.00 per acre. However, the taxpayer did not

2

appeal from the valuation of $4,500.00 per acre made by the Assessment and Appeals Commission.

Each side has an appraiser. The taxpayer's appraiser used some data of comparable sales outside the tax appraisal periods and conducted minimal research as to the relationship of the parties to his comparable sales. On the other side, the property assessor's expert used comparables remote in distance and depended, in large part, upon his own highest and best use analysis of a mixed industrial, commercial and residential use for the property. All of the property is currently zoned R-1 and that zoning does not permit industrial or commercial use.

The assessor's appraiser testified, consistent with his report, that in determining the highest and best use of the property, an appraiser must identify the market forces which affect the value of the property. The assessor's appraiser identified three sources for his information and conclusion that the highest and best use of this property was as mixed-use consisting of predominantly industrial, with the remainder as residential and some commercial. The appraiser testified that his three sources were "the Economic Development guy," the nearby industrial park, and "Mr. Howe."

None of these sources substantiates the assessor's appraiser's "highest and best use" as mixed-use of mostly industrial, some commercial, and the remainder as residential. For his data, the assessor's appraiser testified that "the Economic Development guy" said 30 to 50 of the 141.58 acres as industrial and the remainder as residential and that Mr. Howe said all as residential. The nearby industrial park is a

3

smaller tract and presently has one unsold subtract in the rear of the development. There was no evidence of how much unsold land existed in the industrial park during the years of 2012-2016.

The assessor's appraiser disagrees with his sources of market data and does not otherwise identify any market forces except the industrial park nearby with one unsold tract of land. "The Economic Development guy" is Scott Wilson. Mr. Wilson was in charge of planning and development for the City of Sweetwater. He testified on the last day of the trial in terms of saying some industrial, some residential and some commercial. However, that is not the data used by the assessor's appraiser from Mr. Wilson as expressed by the appraiser to the Court. The assessor's appraiser testified that Mr. Wilson had said 30 to 50 of the 141.58 acres as industrial and the remainder as residential. The appraiser testified that Mr. Howe (William "Bill" Howe), "a commercial broker in the area," had told the appraiser that the 141.58 acres would best be used as all residential.

Both the assessor's appraiser and the taxpayer's appraiser appraise the property as vacant allowing nothing, other than possibly $100.00, up or down for the improvements, and specifically nothing as to what it would cost to demolish the buildings. The evidence is clear that the buildings would have to be demolished and removed. Both appraisers testified that they factored in their appraisals that a buyer would consider the demolition and removal in making an offer. However, it is also clear that the assessor's appraiser valued the property as raw land, as if the buildings did not exist. The assessor's appraiser's comparables are raw land except for Morristown College which has similar

4

buildings, but is located in another county and has now been purchased for a municipal park.

The taxpayer's demolition expert testified that it would cost $1.5 million to demolish and remove the buildings. It is inconceivable that a buyer would disregard demolition costs of $1.5 million in deciding to purchase the property in this case. On the other hand, the taxpayer's assessor does not appear to accept the figure of $1.5 million from the taxpayer's demolition expert. The taxpayer's assessor puts the demolition cost at $500,000.00 to $1.5 million. Regardless, it would appear that the demolition and removal costs are significant for valuing the property.

This property has been and continues to be zoned as residential property according to the assessor's appraiser. The range presented to this court for the value of the property by the taxpayer and the tax assessor is between $3,500.00 and $17,500.00 per acre. The taxpayer's appraiser testified all the property is zoned R-1 and that all the acreage has a value of $3,500.00 per acre. The assessor's appraiser did not appraise the property as actually zoned R-1 and gave no separate valuations for the separate classification of uses in his proposed mixed-use development of low density residential, high density residential, moderate density industrial and moderate density commercial. The property, in fact, was not zoned for any use except as R-1 for any of the tax years in issue, 2012-2016. There could be no use of the property except as permitted by the R-1 zoning. The industrial and commercial uses contemplated by the assessor's appraiser were, in fact, prohibited at all times during the tax years of 2012-2016.

5

## REZONING

The assessor filed her appraiser's report as Trial Exhibit 1. In his report, the assessor's appraiser states that Mr. Wilson stated that the sheer size of the property made it "a candidate for rezoning of any numerous things, business, industrial, etc. and that with a proper plan the city would entertain rezoning for most of these uses if required." The report does not say that Mr. Smith said that the rezoning would most likely be granted.

In another place, the report states that "[r]esearch indicates a likelihood of possible rezoning would occur." However, the report footnotes the research to Mr. Smith's statements, discussed above, that the property would be a candidate for the City to consider rezoning provided there was a proper study. The report goes on to say that based upon those statements of Mr. Smith, "the typical buyer would consider the possibility of rezoning the subject property on any buying decision." The report adds that "[p]urchases are made on anticipation and if the buyer has such an anticipation, a premium over current zoning prices would be considered." The report continues by stating that the uncertainty of a zoning change presents the appraiser of value with two tasks: 'to determine whether market participants will pay a premium over the property's current value as zoned in anticipation of a potential zoning change and to provide support for that conclusion." For these two tasks, the report simply concludes with the following statements:

> To manage their risk, most developers contract to buy property "subject to" rezoning approval rather than "as is." Many pending sales never close

6

because they are subject to rezoning that could not be obtained within the developer's desired time frame or not obtained at all."

Support for the possibility of a zoning change is also provided by the qualitative analysis of the overall site as divided between the eastern and western sections above. The results indicate reconciled conclusions for the site ranked by the following categories.

1. Low-Density Residential (One to four-family residences, religious facilities)

2. High-Density Residential (Condos, townhouses, apartment, senior care facilities)

3. Moderate Density Industrial (Industrial/business park and flex space buildings.)

4. Moderate Density Commercial (Garden office e.g., medical offices, insurance offices) and community retail.

This analysis was used to frame a value opinion for the real property being appraised and for selection of comparable sales.

Thus, the assessor's appraiser's prediction of rezoning is premised upon three things: that Mr. Smith stated that the size of the property made it a candidate for rezoning and that "with a proper plan" the city would consider rezoning the property; that most developers make offers contingent upon rezoning to minimize the risk; and that the results of a qualitative analysis of the overall site "indicate reconciled conclusions for the site" in accordance with the appraiser's choice of mixed uses. The report contains a heading, "CONPARATIVE ANALYSIS AND ADJUSTMENTS," but no real analysis for the appraiser's choice of the four mixed uses or their apportionment. There is no comparable sale or model in Monroe County for the mixed use development. There is no evidence of any actual offer by a developer for the property. The only actual offer was

7

the proposal of $500,000 by Aeroflex, an existing business entity in Monroe County, prior to the property being gifted to the taxpayer. The only other evidence of any offer or proposal was by Paul Gaffney, after the tax periods in issue, which never crystalized

Under the hearing, "COMPARATIVE ANALYSIS AND ADJUSTMENTS," the assessor's appraiser states that his analysis considers "the property as one that the typical buyer would consider as likely for a zoning change" and that "[w]hile the value conclusion is made as if any change has already occurred it is one that would be considered likely and the value should consider that likelihood." However, the foundation for those conclusions rests upon Mr. Smith's statements as set out in the report, which fall short of demonstrating that rezoning is more likely than not for the four (4) different uses. On the other hand, at the hearing, Mr. Smith, who is no longer the City's director of planning and development, stated that it was highly likely that the property would be rezoned. But here, again, Mr. Smith was unaware of any property in Monroe County with mixed zoning for all four (4) of the assessor's appraiser's proposed mixed uses.

Putting the contingency of zoning aside, the more important consideration is the market for this property. There is no data supporting a market of developers seeking land in Monroe County for the development envisioned by the assessor's appraiser.

### ACTUAL MARKET IN MONROE COUNTY

The property assessor's appraiser appraised the property upon his premise that the highest and best use of the property was for a mixed-use development consisting of the

8

uses previously mentioned. However, the assessor's appraiser had no evidence of any such development activity ever occurring in Monroe County. There is not one tract of land in Monroe County with mixed uses on it as set out by the property assessor's appraiser. The assessor's appraiser testified that he valued the land as raw land with no deduction for the demolition costs of $500,000.00 to $1.5 million for removing the buildings because there was the 17.3 acres of property in Morristown, Tennessee, which "sold with an old school, a college that has been closed and dilapidated beyond repair just as the subject property." He also testified "that they still paid $17,000.00 plus an acre for the land" and "the previous developer [of the Morristown property] was looking at it as a multiuse property, very similar to what I've been saying here." The assessor's appraiser did not have any comparables in Monroe County as to price, use or size. The property assessor's appraiser used only one comparable from Monroe County, much less in size, consisting of 17.9 acres.

With no comparables from Monroe County, except the single tract of 17.9 acres, the assessor's appraiser nonetheless used his multiuse approach for determining the highest and best use of the property because he knew that it would take a considerable period of time to develop the property for industrial use. Thus, according to the assessor's appraiser, he "went for multiuse" even though no piece of property exists in Monroe County with mixed uses as set out by the assessor's appraiser. His proposed multiple uses, in addition to the industrial use, consist of low density residential (including religious facilities), high density residential (apartment and senior care facilities), and moderate density commercial (business parks). The assessor's appraiser did not appraise

9

the property as it is currently zoned for low density residential. He did not point out any demand for high density housing in Monroe County but pointed out that there were some older apartment buildings. He concluded that, while the taxpayer's property is located on a two lane highway, it is comparable to an existing industrial park closer to the interstate with land available.

The assessor's appraiser testified that he did not do an appraisal using the development approach because the taxpayer's appraiser did not do an appraisal using the development approach. He also testified that it would take too long to develop the property using only one classification or zoning and that was why he opted for his mixed use approach. The assessor's appraiser testified that the development approach is not used when sales are available. However, the assessor's appraiser did not have one sale in Monroe County upon which to base his mixed use proposal. He could not point to a single parcel of property in Monroe County of over 100 acres which had mixed uses. The taxpayer's appraiser also used the sales approach but utilized the existing zoning for the property as low density residential, R-1.

### APPLICATION OF LAW TO VALUING PROPERTY FOR TAXATION

"The [Tennessee] Constitution provides that property shall be taxed according to its value, which is to be determined as the Gen. Assembly directs." 23 Tenn.Juris., Taxation, § 7 (Method of Valuation). The Tennessee Constitution grants to the General Assembly authority to direct the manner and mode of how property is valuated for taxation. Tenn. Const., Art. II, Section 28. *See Metropolitan Gov't v. Hillsboro Land Co.*,

10

436 S.W.2d 85(1968). However, both sides in this case have stated that the directives
from the legislature only apply to assessors during mass appraisals and that the legislative
directives otherwise have no pertinence to this case. This Court, however, is not as
receptive, as the parties, to assuming that the Tennessee Constitution and statutes do not
apply. On or about January 17, 2020, the taxpayer filed a document titled,
"RESPONDENT'S POSITION ON TENNESSEE CODE ANNOTATED §§ 67-5-601
AND 67-5-602, appearing to change its position.

"Taxes on property for County purposes shall be imposed on the value of the
property as defined and determined in [Tenn. Code Ann. § 67-5-101 *et seq.*] and as
otherwise provided by law." Tenn. Code Ann. § 67-5-102. The same criteria exist for
municipalities. *See* Tenn. Code Ann. §67-5-103.

Tenn. Code Ann. § 67-5-801(c)(1) provides that "[a]ll real property that is vacant
or unused, or held for use, shall be classified according to its immediate most economical
use which shall be determined after consideration of: (A) Immediate prior use, if any; (B)
Location; (C) Zoning classification;…. (D) Other legal restrictions on use; (E)
Availability of water, electricity, gas, sewers, street lighting, and public services; (F)
Size; (G) Access to public thoroughfares; and (H) Any other factors relevant to a
determination of the immediate most economic use of the property." Tenn. Code Ann. §
67-5-801(c)(1) . The main factors here are this property's immediate prior use, location,
zoning classification, availability of water, electricity and sewers, size and access to
public thoroughfares, and the factor of the buildings that are obsolete, functionally and
physically.

11

The property was last used as a school approximately 13 years ago; it is located in the outer limits of Sweetwater, Tennessee, in Monroe County; it is zoned R-1; utilities and sewers are available to it; it consists of approximately 142 acres; it is located on a two lane highway; there are no sales in Monroe County indicating a demand for the property as industrial or commercial or high density housing; and the buildings that are situated on the property should be removed at a cost of between \$500,000.00 and \$1,500,000.00. Under this criteria, the property's value is to "be ascertained from the evidence of its sound, intrinsic and immediate value, for purposes of a sale between a willing seller and a willing buyer without consideration of speculative values." Tenn. Code Ann. § 67-5-601(a).

The Tennessee legislature has provided that in assessing property for taxation, "all property of every kind shall be appraised according to its sound, intrinsic and immediate economic value, which shall be ascertained in accordance with assessment manuals as may be promulgated and issued by the state division of property assessments and approved by the state board of equalization pursuant to law." Tenn. Code Ann. § 67-5-601(a). "[I]n determining the value of all property of every kind," Tennessee statutory law requires that "the assessor shall be guided by, and follow the instructions of, the appropriate assessment manuals issued by the division of property assessments and approved by the state board of equalization." Tenn. Code Ann. §67-5-502(a). The manuals, in determining the value of real property, are required, by statute, to provide for consideration of factors including location, current use, zoning, restrictions on use, availability of utilities and sewers, and "[a]ll other factors and evidence of value

12

generally recognized by appraisers as bearing on the sound, intrinsic, and immediate economic value at the time of assessment." Tenn. Code Ann. § 67-5-602(b). The record in this case does not include the required manuals as the source of any information or evidence. However, regarding "the immediate economic value of the property at the time of assessment," the record shows that the property is located in a rural area but within the city limits of Sweetwater, Tennessee, on a two lane highway, last used 13 years ago as a school, zoned R-1 (low density housing), and with water and utilities available.

The assessor's appraiser would reclassify the property for mixed uses and revalue it for those purposes. None of the theories of the assessor's appraiser were reality at the time of the assessments in this case. The assessor's appraiser's determination of value, based upon his hypothesis for mixed-uses, greatly exceeds the assessor's determination of value for the land in 2012 and is over 2 ½ times the assessor's determination of value for the land in 2013-2016.

## CONCLUSION

This Court finds and concludes that the highest and best use analysis of the assessor's appraiser is not sustained by the evidence and rests heavily upon the appraiser's supposition. The Court finds and concludes that the appraisal of the assessor's appraiser is not adequately supported by evidence of the property's "sound, intrinsic and immediate value" within the statutory criteria. The prayer of Monroe County and its Property Assessor for reversal of the decision of the Assessment and Appeals Commission will be denied. The taxpayer did not appeal or petition for review of the

13

decision of the Assessment and Appeals Commission. The decision of the Assessment and Appeals Commission that the value of the property is $4,500.00 per acre is affirmed.

In the conclusion to their document titled, "PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW ON BEHALF OF MONROE COUNTY, TENNESSEE AND MONROE COUNTY ASSESSOR OF PROPERTY," the petitioners, Monroe County and its assessor, argue that Monroe County and the city of Sweetwater are entitled to delinquent penalties and interest, delinquent filing fees, and delinquent attorney fees. They state that the "[a]ttorney for Monroe County shall file a statement of taxes, interest, cost and delinquent fees and costs within 30 days of the entry of an order from this Court." However, the petitioners, Monroe County and its assessor, did not raise any such matters in their PETITION FOR REVIEW OF STATE BOARD OF EQUALIZATION ACTION. Except for the taxpayer's representative's testimony as to attempts to pay the real property taxes under protest, the record is undeveloped as to the actual taxes due, delinquent penalties and interest, delinquent filing fees and delinquent attorney fees. The Court will set these matters for a further hearing.

Signed this **2 6** th day of June, 2020.

John J. Weaver
CHANCELLOR

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was placed in the United States Mail, postage prepaid to:

Robert T. Lee, Esq.
P.O. Box 1297
Mt. Juliet, TN 37121

James E. Wagner, Esq.
P.O. Box 39
Knoxville, TN 37901

Mitch Porcello, Esq.
P.O. Box 20207
Nashville, TN 37202

This 26th day of June, 2020.

Howard G. Hogan
Clerk and Master

15

# Exhibit "C"

Certified List of Delinquent *Ad Valorem* Taxes
Due the City of Sweetwater, Tennessee
for Tax Map 019, Parcel 194.01
(and Special Interest 2 prior to 2018)

| Receipt Year | Receipt No. | Special Interest | Base Amount Due |
|---|---|---|---|
| 2011 | 2798 | 002 | $ 3,777.00 |
| 2011 | 2799 | | $ 1,392.00 |
| 2011 | 2800 | | $ 39,467.00 |
| 2012 | 859 | | $ 1,237.92 |
| 2012 | 860 | | $ 921.97 |
| 2012 | 861 | 002 | $ 0.00 |
| 2013 | 895 | | $ 1,580.67 |
| 2013 | 896 | | $ 1,176.65 |
| 2013 | 897 | 002 | $ 0.00 |
| 2014 | 887 | | $ 1,302.75 |
| 2014 | 888 | | $ 970.48 |
| 2014 | 889 | 002 | $ 0.00 |
| 2015 | 891 | | $ 1,302.75 |
| 2015 | 892 | | $ 970.48 |
| 2015 | 893 | 002 | $ 0.00 |
| 2016 | 2526 | | $ 1,263.36 |
| 2016 | 2527 | | $ 970.48 |
| 2016 | 2528 | 002 | $ 0.00 |
| 2017 | 2538 | | $ 1,069.00 |

FILED

AUG 0 5 2024

TIME _Ex. C 11:15_
PagelD #49 A. CHOATE
CLERK & MASTER MONROE CT

| | | | | |
|---|---|---|---|---|
| 2017 | 2539 | | $ | 40,296.00 |
| 2017 | 2540 | 002 | $ | 3,897.00 |
| 2018 | 2544 | | $ | 8,177.00 |
| 2019 | 2557 | | $ | 8,177.00 |
| 2020 | 2546 | | $ | 8,174.00 |
| 2021 | 2579 | | $ | 8,170.00 |
| 2022 | 2594 | | $ | 8,170.00 |
| 2023 | 2644 | | $ | 5,533.00 |
| | | TOTAL: | $ | 147,996.51 |

I certify that the foregoing is a true and accurate report of delinquent *ad valorem* taxes due the City of Sweetwater, Tennessee, for Tax Map 019, Parcels 194.00 and 194.01 through 2023 and Special Interest 2 prior to 2018.

JESSICA P. MORGAN, *Recorder*



# Exhibit "D"

Certified List of Delinquent *Ad Valorem* Taxes
Due Monroe County, Tennessee
for Tax Map 019, Parcel 194.01
(and Special Interest 2 prior to 2018)

| Receipt Year | Receipt No. | Special Interest | Base Amount Due |
|---|---|---|---|
| 2011 | 25093 | | $ 67,509.00 |
| 2011 | 25092 | | $ 2,380.00 |
| 2011 | 25091 | 002 | $ 6,461.00 |
| 2012 | 8104 | | $ 2,116.56 |
| 2012 | 8105 | | $ 1,577.04 |
| 2012 | 8106 | 002 | $ 0.00 |
| 2013 | 8278 | | $ 2,273.36 |
| 2013 | 8279 | | $ 1,687.77 |
| 2013 | 8280 | 002 | $ 0.00 |
| 2014 | 8243 | | $ 2,273.36 |
| 2014 | 8244 | | $ 1,687.77 |
| 2014 | 8245 | 002 | $ 0.00 |
| 2015 | 8233 | | $ 2,273.36 |
| 2015 | 8234 | | $ 1,687.77 |
| 2015 | 8235 | 002 | $ 0.00 |
| 2016 | 22522 | | $ 2,205.27 |
| 2016 | 22523 | | $ 1,687.77 |
| 2016 | 22524 | 002 | $ 0.00 |
| 2017 | 22578 | | $ 1,866.00 |

FILED

AUG 0 5 2024

TERESA A. CHOATE
CLERK & MASTER MONROE CTY.

| 2017 | 22579 |     | $ | 70,324.00 |
|------|-------|-----|----|-----------|
| 2017 | 22580 | 002 | $ | 6,801.00 |
| 2018 | 22695 |     | $ | 11,729.00 |
| 2019 | 22747 |     | $ | 11,729.00 |
| 2020 | 22871 |     | $ | 13,266.00 |
| 2021 | 23065 |     | $ | 13,258.00 |
| 2022 | 23080 |     | $ | 13,258.00 |
| 2023 | 23166 |     | $ | 9,015.00 |
|      |       |     | $ | 247,066.03 |

I certify that the foregoing is a true and accurate report of delinquent *ad valorem* taxes due Monroe County, Tennessee, for Tax Map 019, Parcel 194.01 and Special Interest 2 prior to 2018.

*Marna Maynard Hull, Trustee*
MARNA MAYNARD HULL, *Trustee*

# In the Chancery Court for Monroe County, Tennessee

CITY OF SWEETWATER, TENNESSEE, )
and MONROE COUNTY, TENNESSEE, )
                       )
      Plaintiffs, )
                       )   No. _____
VS. )
                       )
SAKURA PRESERVATION TRUST, *et al.*, )
                       )
      Defendants. )

## Affidavit of Abandonment

Comes Jon Campbell, being first duly sworn according to law, depose and say as follows:

*1.* I am over the age of eighteen years and competent to make this affidavit. The facts set forth in this affidavit are within my personal knowledge. I make this Affidavit in connection with the condition of TMG, Map 015, Parcel 194.01.

*2.* As Codes Enforcement Officer of the City of Sweetwater, I personally made three (3) periodic inspections of TMG on September 27, 2022 at 12.00 p.m., on March 15, 2023 at 9:30 a.m., and on July 10, 2024 at 2:00 p.m.. On each of these dates, I witnessed the following evidence of abandonment of TMG:

  (i) Overgrown or dead vegetation;

  (iii) Past due utility notices, disconnected utilities, or utilities not in use;

  (iv) Accumulation of trash, refuse, or other debris;

  (v) Absence of window coverings such as curtains, blinds, or shutters;

  (vi) One (1) or more boarded, missing, or broken windows;

FILED

AUG 0 5 2024

TIME *EX.E* *11:15*

TERESA A. CHOATE
CLERK & MASTER MONROE CTY.

Exhibit "E"

(vii) The property is open to casual entry or trespass; and

(viii) The property has a building or structure that is or appears structurally unsound or has any other condition that presents a potential hazard or danger to the safety of persons.

FURTHER, AFFIANT SAITH NOT.

JON CAMPBELL

Sworn to and subscribed before me
this 14ᵗʰ day of July, 2024.

Notary Public

My Commission Expires: 02/20/2026

Mail to :

This instrument prepared by:
Heath & Ames Attorneys, P.C.
1303 Carter Street
Chattanooga, TN 37402
**File #:14-19073 dot**



BK/PG: Y-31/228-235
**14003562**
6 PGS-AL-TRUST DEED
DEB BATCH: 49317
07/01/2014 - 01:20 PM
VALUE                              730000.00
MORTGAGE TAX                          837.50
TRANSFER TAX                            0.00
RECORDING FEE                          40.00
DP FEE                                  2.00
REGISTER'S FEE                          3.00
TOTAL AMOUNT                          882.50
STATE OF TENNESSEE, MONROE COUNTY
**MILDRED ESTES**
REGISTER OF DEEDS

## DEED OF TRUST

**IN CONSIDERATION** of One Dollar, in hand paid, and the premises herein stated **SAKURA PRESERVATION TRUST, DR. S. L. FREED, as Trustee, a Land Trust**, hereinafter referred to as Grantor, whether one or more does hereby sell, transfer and convey to **FIRST TITLE INSURANCE COMPANY**, with its principal office at 1303 Carter Street, Chattanooga, Tennessee, 37402, or their Successors in Trust or Assigns, as Trustee, the following described Real Estate **and collateralization of personal property of Enota Institute, Inc. including Home Depot Donations.**

**SEE EXHIBIT "A" FOR LEGAL DESCRIPTION AND PRIOR TITLE.**

**MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $730,000.00.**

**THIS DEED IS PREPARED FROM INFORMATION FURNISHED BY THE PARTIES TO THE INSTRUMENT AND THE PREPARER NOR FIRST TITLE INSURANCE COMPANY MAKES ANY REPRESENTATION AS TO TITLE OR ACCURACY OF INFORMATION.**

**GRANTEE IS RESPONSIBLE FOR RECORDING DEED OF TRUST AND TO BE RECORDED AS SOON AS POSSIBLE TO PROTECT THEIR INTEREST.**

**TO HAVE AND TO HOLD** the same unto the said Trustee, and unto its successors in trust and assigns, forever.

Grantors covenant they are lawfully seized and possessed of said property; have full authority to sell and convey the same; that title thereto is unencumbered, except:

**TAXES** for the year 2014 are a lien, **NOT YET DUE AND PAYABLE.**

But this conveyance is made in trust for the following purposes, and not otherwise:

To secure payment by Sakura Preservation Trust to Enota, Inc., at 1000 Highway 180, Hiawassee, GA 30546 the full sum of Seven Hundred Thirty Thousand and xx/100 Dollars, ($730,000.00), evidenced by the following described note:

**FILED**

AUG 0 5 2024
TIME _6X.F 11:15_
TERESA A. CHOATE
CLERK & MASTER MONROE CTY.

**Exhibit "F"**

Installment Note being due and payable at the rate of Ten (10%) per centum per annum on or before the **first (1st)** day of **July, 2014**, and one installment being due and payable on or before the **first (1st)** of each **quarter** thereafter for **ten (10) years** or until the sum of **Seven Hundred Thirty Thousand and xx/100 Dollars ($730,000.00)**, on the principal and all interest thereon, shall have been fully paid and satisfied. **This Note to be effective as of October 2011.**

**This note is assumable only with the written consent and approval of the noteholder who has the option of re-negotiating the terms and interest rate of the note, and the balance due under this note shall be due and payable immediately in the event of and at the time of any sale of the collateral securing this Note. There is no Prepayment Penalty.**

The Grantors hereby agree to keep the property free from all taxes or other legal assessments, or statutory liens that may become superior to the lien of the debt hereby secured, and to pay all prior liens before they become delinquent; and to keep all improvements on the property insured in one or more insurance companies against loss by fire; windstorm, cyclone, or tornado, for a sum equal to the balance of the principal of the debt, the insurance company or companies to be approved by and the policy or policies delivered to the holder of the debt, to whom the insurance shall be made payable.

If the Grantors shall fail to pay all taxes, assessments, statutory liens, or any prior liens against the property before they become delinquent, or shall fail to effect such insurance, then the holder of the debt may pay such liens and effect such insurance.

The amounts the holder of the debt may expend or become liable for by reason of the provisions of this instrument or of the note or notes secured, shall be added to the principal debt, repayable on demand, become a lien in the property, bear interest from date of payment, at the maximum legal rate, and repayment may be enforced in the manner provided for enforcing the payment of the principal debt.

The Grantors further agree to keep the property in a good state of repair, commit or permit no waste; to sanction or make no major alterations or improvements without the consent of the holder of the debt hereby secured; to comply fully and promptly with all applicable zoning ordinances and governmental regulations concerning the property and uses thereof; and to comply with all restrictive and special covenants which may have been imposed upon the property, or its owners, or upon the uses thereof.

In event of the institution of legal proceedings involving the property above described or the debt hereby secured, it is agreed that the holder of the debt shall be entitled to have a receiver appointed to take charge of the premises, collect the rents, issues and profits, and keep the improvements in good repair.

If more than one note is secured by this instrument, or if any note

Page 2

secured is payable in installments, then failure to pay any note or installment promptly when due or failure to pay any other sums due and payable under the terms hereof, or to perform any covenant or agreement herein set forth, then such default shall, at the option of the holder, accelerate to maturity all unpaid notes or installments, and all other sums due hereunder, and they shall all become immediately due and collectible as herein provided.

The Grantors shall retain possession of the property hereby conveyed and receive and use the rents, issues and profits thereof until some default after which the rents, issues and profits shall be due and payable to the holder of the debt hereby secured.

When the principal debt and interest, and all other indebtedness on account of the provisions of this instrument, or note or notes secured hereby, have been paid, the holder of the debt shall execute and deliver to Grantors, or enter of record in the County Register's Office, a release of all obligations contained in this instrument or the note or notes secured hereby; but in case of non-payment of any installment of principal, or interest, or failure to perform any covenant in, or to pay any prior liens, or pay any charge on account of the provisions of this instrument, or the note or notes secured hereby, or to repay any sums advanced by the holder of the debt, with interest thereon, then the whole indebtedness and all obligations secured by this instrument shall, at the option of the holder, become immediately due and collectible without notice, and the trustee is hereby authorized and empowered, after advertising the time, place and terms of sale for a period of at least twenty days in a newspaper published in **Monroe** County, **Tennessee,** which notice shall be published three different times, to expose the said property for sale at public auction in front of the Courthouse for **Monroe** County, **Tennessee,** and sell the same to the highest and best bidder or cash in hand paid, in bar of the equity of redemption, homestead and dower, all of which are expressly waived. Grantors do expressly waive all statutory rights of redemption, particularly that provided by **TCA§ 66-8-101**.

#### REQUEST FOR NOTICE OF DEFAULT AND
#### ---------------FORECLOSURE UNDER SUPERIOR MORTGAGES ---------------
#### OR DEEDS OF TRUST

Borrower and Lender (or the holder of the debt secured by this security instrument) requests the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address previously set forth , of any default under the superior encumbrance and of any sale of other foreclosure action.

In the event the property is located in two or more Counties, advertisement of the sale shall be made in each County, with the sale to be made in such one of the Counties as may be designated in the advertisement.

All Parties at interest hereby expressly waive oath, inventory, and bond for execution of this trust in the part of the trustee.

In case of a sale hereunder, the trustee will execute to the purchaser a trustee's Deed and Grantors covenant and agree to place the purchaser in quiet and peaceable possession of the property. From the date of such sale, any parties occupying the premises shall become the tenants at will of the purchaser at the sale.

Page 3

In the event of default, foreclosure and sale of the property by the trustee, the proceeds of the sale shall be applied by the trustee as follows:

First, to the payment of the expense of this trust and its execution, and all sums expended or become liable for on account of any of the provisions of this trust deed.

Second, to the payment of the debt secured by this instrument. The trustee will hold any balance subject to the order of the Grantors, or to the order of the holder of inferior liens, if any.

In addition to the power of sale above provided, the holder of the debt hereby secured shall have the right to proceed in a court of equity to foreclosure of this deed of trust. He shall also be entitled to the appointment of a receiver to collect rents, issues and profits while such suit is pending and to judgment over for any difference between the amount paid for the property either at a trustee's sale or at sale under order of the court and total indebtedness accrued under the provisions of this instrument.

Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all title, power and duties conferred upon Trustee herein and by applicable law.

In the Event the holder of the debt and/or the trustee shall be made parties to any litigation involving the property herein described, any court costs, expenses and fees reasonably incurred shall be chargeable to the Grantors, bears interest from date of payment at the maximum legal rate, be repayable on demand, and secured by this Instrument as fully as the principal debt.

Executed by Grantors, effective as of October, 2011, and executed this _30_ day of **June, 2014**.

**SAKURA PRESERVATION TRUST**

BY: **DR. S. L. FREED, as Trustee**

**ENOTA INSTITUTE, INC.**

**S. L. FREED , CFO**

## ACKNOWLEDGMENT CERTIFICATE

**STATE OF TENNESSEE**
**COUNTY OF HAMILTON**

On this <u>30TH</u> day of June, 2014, before me personally appeared Dr. S. L. Freed, Trustee, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.

**IN WITNESS WHEREOF** I have hereunto set my hand and Notarial Seal.

_Lizy Heath_
**NOTARY PUBLIC**

My commission expires: <u>4-9-16</u>

**STATE OF TENNESSEE**

**COUNTY OF HAMILTON**

On this the <u>30TH</u> day of JUNE **2014,** before me personally appeared **S.L. FREED,** with whom I am personally acquainted, and who upon oath, acknowledged herself to be a Chief Financial Officer of Enota Institute, Inc. the within named bargainor, a **corporation,** and that she as such Chief Financial Officer , being authorized so to do, executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by herself as such officer.

<u>4-9-16.</u>
My Commission Expires:

_Lizy Heath_
Notary Public

Page 5

# E X H I B I T "A"

LOCATED IN THE FIRST CIVIL DISTRICT OF MONROE COUNTY, TENNESSEE, AND IN THE CITY OF SWEETWATER, and being more particularly described as follows:

## TRACT ONE (1):

BEGINNING at an iron pin corner at the intersection of U.S. Highway 11 right-of-way and a private drive; thence running from said iron pin, North 88 degrees 59 minutes West 760.30 feet to a point; thence running from said point, South 01 degrees 01 minutes West, 6 feet to a point; thence running from said point, North 88 degrees 59 minutes West, 190 feet to a point in the edge of Peachtree Street; thence running from said point, North 01 degree 01 minute East, 36 feet to a point; thence running from said point, North 89 degrees 02 minutes West, 60 feet to a point; thence running from said point, North 00 degrees 39 minutes East, 105 feet to a point; thence running from said point, North 89 degrees 21 minutes West, 275 feet to a point; thence running from said point, South 00 degrees 39 minutes West, 105 feet to a point; thence running from said point, North 89 degrees 21 minutes West, 261.28 feet to a point; thence running from said point, North 02 degrees 06 minutes 39 seconds East, 1,564.87 feet to a point; thence running from said point, South 87 degrees 01 minute 21 second East, 500 feet to a point; thence running from said point, South 02 degrees 06 minutes 39 seconds West, 463.20 feet to a point; thence running from said point, South 88 degrees 59 minutes East, 755.17feet to a point; thence running from said point, South 01 degree 01 minute West, 300 feet to a point; thence running from said point, south 83 degrees 08 minutes East, 750 feet to a point in the edge of U.S. Highway 11 right-of-way; thence running from said point and with the U.S. Highway 11 right-of-way, the following calls and distances: South 38 degrees 13 minutes West, 430.17 feet; South 37 degrees 28 minutes West, 57.40 feet; South 34 degrees 43 minutes West, 103.70 feet; South 30 degrees 19 minutes West, 104.50 feet; South 26 degrees 09 minutes West, 97.10 feet; and South 22 degrees 20 minutes West, 86.20 feet to an iron pin and being the point of beginning.

## TRACT TWO (2):

## PARCEL ONE (1):

BEGINNING at a corner on the Easterly side of the property, the intersection of the Northwesterly line of U.S. Highway No. 11 and the South line of the Schettler property, at a box culvert at U. S. Highway No. 11; thence following U. S. Highway No. 11, South 38 degrees 13 minutes West, 995.6 feet to a point, the most easterly corner of the W. D. Haynes lot; thence leaving the highway, North 51 degrees 47 minutes West, 201 feet to an iron pin; thence South 00 degrees 08 minutes East, 191.5 feet to a point; thence South 51 degrees 47 minutes East, 82 feet to the U. S. Highway No. 11; thence continuing in Southwesterly direction with the said highway, South 38 degrees 13 minutes West, 502.7 feet to a point; thence South 37 degrees 28 minutes West, 57.4 feet to a point; thence South 34 degrees 43 minutes West, 103.7 feet to a point; thence South 30 degrees 19 minutes West, 104.5 feet to a point; thence South 26 degrees 09 minutes West, 97.1 feet with said highway to a point; thence South 22 degrees 20 minutes West, 86.2 feet with said highway to a corner; thence following the North line of College Park

Addition, North 88 degrees 59 minutes West, 760.3 feet to a point; thence following the West line of a 20 foot alley, South 01 degree 01 minute West, 126 feet to a point, the Southeast corner of Lot Twenty-two (22) said Addition; thence following the South line of Lot Twenty-two (22), College Park Addition, North 88 degrees 59 minutes West, 190 feet to an iron pin in the East line of Peachtree Street; thence following Peachtree Street, North 01 degree 01 minute East, 156 feet to a point; thence North 88 degrees 32 minutes West, 60 feet to a rock; thence North 89 degrees 21 minutes West, 871.8 feet to a corner; thence following an old road bed, North 28 degrees 27 minutes West, 100 feet to a point; thence North 48 degrees 16 minutes West, 178.8 feet with old road bed to a point; thence North 59 degrees 30 minutes West, 145.5 feet to Pond Creek Road; thence following the Pond Creek Road, North 03 degrees 16 minutes East, 614.0 feet to a point; thence with said Pond Creek Road, North 13 degrees 23 minutes East, 881.4 feet to a point; thence with said Pond Creek Road, North 31 degrees 28 minutes East, 209.7 feet to a point; thence North 36 degrees 04 minutes East, 530.4 feet to a fence post; thence with the line of Schettler, South 88 degrees 57 minutes East, 1,826.0 feet to an iron pin; thence with the line of Schettler, South 52 degrees 57 minutes East, 414.5 feet to a point; thence South 42 degrees 35 minutes East, 330 feet to a point; thence South 72 degrees 48 minutes East, 72.7 feet to a point; thence South 57 degrees 20 minutes East, 345.2 feet to the beginning corner.

## EXCEPTING THEREFROM THE FOLLOWING TWO PARCELS:

### PARCEL ONE (1):

BEING the property conveyed to Leslie W. Cole and wife, Judy S. Cole, by deed recorded November 20, 1979 in Deed Book 152, Page 598, in the Register's Office of Monroe County, Tennessee, and being the property known as the old "infirmary Property", located on the Easterly side of Peachtree Street, described as follows:

BEGINNING at a point on the Easterly side of Peachtree Street, at the Southwest corner of Lot No. Twenty-two (22) in the College Park Addition to the City of Sweetwater; thence running with Peachtree Street, North 01 degree 01 minute East, 120 feet to a corner; thence running South 88 degrees 59 minutes East, 190 feet to a corner; thence running South 01 degree 01 minute West, 120 feet to a corner, being the Southeast corner of Lot No. Twenty-two (22) in the College Park Addition to the City of Sweetwater; thence running North 88 degrees 59 minutes West, 190 feet to the point of beginning.

### PARCEL TWO (2):

BEING the property conveyed to Academy, Ltd., a Limited Partnership, by deed recorded December 30, 1983 in Deed Book 167,Page 351, in the Register's Office of Monroe County, Tennessee, described as follows: BEGINNING at an iron pin corner at the intersection of U.S. Highway 11 right-of-way and a private drive; thence running from said iron pin, North 88 degrees 59 minutes West, 760.30 feet to a point; thence running from said point, South 01 degree 01 minute West, 6 feet to a point; thence running from said point, North 88 degrees 59 minutes West, 190 feet to a point in the edge of Peachtree Street; thence running from said point, North 01 degree 01 minute East, 36 feet to a point; thence running from said point, North 89 degrees 02 minutes West, 60 feet to a point; thence running from said point, North 00 degrees 39 minutes East, 105 feet to a point; thence running from said point, North 89 degrees 21 minutes West, 275 feet to a point; thence

running from said point, South 00 degrees 39 minutes West, 105 feet to a point; thence running from said point, North 89 degrees 21 minutes West, 261.28 feet to a point; thence running from said point, North 02 degrees 06 minutes 39 seconds East, 1,564.87 feet to a point; thence running from said point, South 87 degrees 01 minute 21 seconds East, 500 feet to a point; thence running from said point, South 02 degrees 06 minutes 39 seconds West, 463.20 feet to a point; thence running from said point, South 88 degrees 59 minutes East, 755.17 feet to a point; thence running from said point, South 01 degree 01 minute West, 300 feet to a point; thence running from said point, South 83 degrees 08 minutes East, 750 feet to a point in the edge of U. S. Highway 11 right-of-way; thence running from said point and with the U. S. Highway 11 right-of-way, the following calls and distances; South 38 degrees 13 minutes West, 430.17 feet; South 37 degrees 28 minutes West, 57.40 feet; South 34 degrees 43 minutes West, 103.70 feet; South 30 degrees 19 minutes West, 104.50 feet; South 26 degrees 09 minutes West, 97.10 feet; and South 22 degrees 20 minutes West, 86.20 feet to an iron pin and being the point of beginning.

LOCATED IN THE FIRST CIVIL DISTRICT OF MONROE COUNTY, TENNESSEE, AND IN WHAT IS KNOWN AS ACADEMY SUBDIVISION TO THE CITY OF SWEETWATER, TENNESSEE, and being more particularly described as follows:

TRACT THREE (3):
BEGINNING at a point which is the Southeast corner of the original tract conveyed to Tennessee Military Institute, Inc., said beginning point being an iron stake in the Highway No. 11 right-of-way and running with Highway No. 11, 150 feet in Northeasterly direction to an iron stake; thence in a line perpendicular to Highway No. 11, 197 feet to the intersection with the tree line marking the South boundary of the T.M.I. Golf Course; thence South 179 feet to an iron stake; thence 82 feet perpendicular to the Highway No. 11 right-of-way to the beginning point.

THERE IS SPECIFICALLY EXCEPTED from the above described tracts of property those portions of the same lie within the bounds of the following deeds recorded in Warranty Deed Book 322, Page 126, in Warranty Deed Book 328, Page 718, in Warranty Deed Book 323, Page 197, in Warranty Deed Deed Book 323, Page 152, and in Warranty Deed Book 330, Page 556, in said Register's Office.

For prior title and last instrument of record affecting the above described property, see deed recorded in WD Book 349, Page 816, in said Register's Office.